**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KEVIN M. SCANLON,                    )
                                     )
                    Plaintiff,       )
        v.                           )
                                     )    **2:03cv869**
HONEYWELL, INC.,                     )
                                     )
                    Defendant.       )

**MEMORANDUM OPINION AND ORDER**

Before the Court for consideration and disposition are DEFENDANT'S MOTION IN LIMINE (*Document No. 37*), with brief in support (*Document No. 38*) and PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE (*Document No. 47*).  For the following reasons, Defendant's Motion in Limine will be granted in part and denied in part.

Background

Plaintiff Kevin Scanlon ("Scanlon") filed a Complaint in which he alleged age discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*., religion and national origin discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., ("Title VII"), and retaliation, in violation of Title VII.  In a Memorandum Opinion and Order filed on March 18, 2005, the Court granted summary judgment in favor of Honeywell on Scanlon's claims of age, religion and national origin discrimination. However, the Court found that there was a genuine issue of material fact as to whether Honeywell retaliated against Scanlon due to his July 12, 2001 call to Honeywell's Ethics Hotline.[1]

To establish a *prima facie* case of retaliation, Scanlon must demonstrate that: 1) he engaged in conduct protected by Title VII; 2) the employer took an adverse action against him

---

[1].  William Lendh, Scanlon's supervisor, had previously made derogatory comments about Irish Catholics to Scanlon.  Approximately three months later Scanlon called the Ethics Hotline and expressed that he was worried that Mr. Lendh was planning to terminate his employment because he is Irish Catholic.

either after or contemporaneous with the protected activity; and 3) a causal link exists between his protected conduct and the employer's adverse action. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (citation omitted). The gravamen of Scanlon's retaliation claim is that Honeywell management, and particularly William Lendh, Scanlon's supervisor, engaged in a pattern of harassment and excessive monitoring, put Scanlon on a performance plan which had unreasonable and/or unattainable goals, and ultimately fired him due to the ethics complaint.

<u>Discussion</u>

Honeywell contends that various evidence is not relevant to whether Scanlon was the victim of unlawful retaliation, and therefore should be excluded. The Court will address the categories of evidence *seriatim.*

    A.   <u>Alleged wrongs that occurred prior to Scanlon's ethics complaint</u>

Honeywell contends that various events which occurred *prior to* Scanlon's July 12, 2001 call to the Ethics Hotline cannot possibly be relevant to whether Honeywell retaliated against Scanlon because the events occurred *prior to* the call. Honeywell Br. at 2. Specifically, Honeywell contends that evidence of the following events should be excluded: 1) the removal of West Virginia from Scanlon's territory; 2) increases in Scanlon's quota; and 3) the downgrading of Scanlon's performance appraisal. *Id*. at 2-3. Scanlon, on the other hand, contends that the loss of sales territory and increases in his quota "tend[] to show that the standards and goals set by [William] Lendh, and approved by Lendh's superiors and its Human Resources representatives ... were objectively unreasonable and unachievable." Scanlon Br. at 2. As to the performance appraisal, Scanlon contends that although other sales representatives also had their performance appraisals downgraded, he was the only sales representative who was ultimately terminated from employment, which tends to show that he was subjected to retaliation. *Id*. at 3.

The Court understands that one of Scanlon's theories is that due to the loss of West Virginia and the subsequent increases in his sales quota, it became much more difficult to fulfill

the post-complaint requirements set for him by Lendh.[2]  Scanlon will apparently argue that Lendh was aware of these difficulties and later, as a form of retaliation for the ethics complaint, set goals which were "objectively unreasonable and unachievable" given the constraints under which Scanlon was working.

The Court finds and rules that evidence of 1) the removal of West Virginia from Scanlon's territory, and 2) increases in his sales quota under Lendh are relevant to providing the background and/or context for allegedly retaliatory job requirements later imposed on Scanlon by Lendh.  Scanlon's theory that he was already "under the gun," so to speak, when Lendh imposed additional and unrealistic requirements on him is not illogocal.  Therefore, Scanlon will be permitted to introduce evidence that West Virginia was removed from his sales territory, and of increases to his sales quotas during his supervision by Lendh.  The Court also finds and rules that the downgrading of Scanlon's performance appraisal may be relevant to whether Scanlon was subjected to retaliation.  Scanlon's theory that although others had their performance appraisals downgraded, he was the only one to be placed on a performance improvement plan and/or terminated, which may show Lendh's alleged animosity toward Scanlon, is not implausible.  Therefore, Scanlon will be permitted to introduce evidence that his performance appraisal was downgraded.

B.    Scanlon's discussions with co-workers prior to his ethics complaint

Scanlon informed various co-workers of the substance of Lendh's "Irish-Catholic" comments shortly after the comments were made, but before he reported the incident to the Ethics Hotline.  *See* Honeywell Br. at 4.  Scanlon testified at his deposition that he has no knowledge that Lendh or other managers learned of the complaint until after July 12, 2001.

---

[2].  The Court observed in its Memorandum Opinion and Order that "[t]here is no evidence that [Lendh] ... or Guy Grumbles ..., who was Lendh's supervisor, removed West Virginia from Scanlon's sales territory."  Memorandum Opinion and Order at 2.  There is also no evidence that Scanlon was singled out for an increased quota, or that he was singled out for a downgrade to his performance appraisal.

Scanlon dep. at 203-05.  Honeywell contends that Scanlon's conversations with co-workers regarding Lendh's "Irish-Catholic" comments are not relevant to whether Lendh or others retaliated against Scanlon.  Honeywell Br. at 4.  Scanlon contends that evidence of his conversations with co-workers is relevant to prove 1) that he was actually offended by Lendh's comments, and 2) that his reaction to Lendh's comments was reasonable under the circumstances.

The Court finds and rules that evidence of Scanlon's conversations with co-workers regarding Lendh's "Irish-Catholic" comments is not relevant.  Scanlon testified that he has no evidence that Honeywell's management became aware of his feelings about the "Irish-Catholic" comments through his co-workers.  Moreover, whether Scanlon was actually and/or reasonably offended by Lendh's comments is not germane to whether Honeywell's management retaliated against Scanlon due to the ethics complaint.   Finally, even if evidence of those conversations were somehow relevant, the Court finds and rules that the probative value could be no more than marginal, and would be substantially outweighed by the possibility of undue delay and possible confusion regarding the "protected activity" at issue in this case.  Therefore, Scanlon will not be permitted to introduce evidence of his conversations with co-workers regarding Lendh's "Irish-Catholic" comments.

C.    Performance reviews and/or awards for performance prior to 2001

Honeywell contends that "Plaintiff's performance reviews and awards regarding his pre-2001 performance under other managers are not relevant to the legitimacy of Mr. Lendh's criticisms of Plaintiff's performance in 2001-2002, and they should be excluded under Rule 402 and 403."  Honeywell Br. at 5.  Scanlon contends that such evidence will "show that Defendant was so angry with Plaintiff for having complained about his manager, Lendh, that it supported Lendh's efforts to retaliate against Plaintiff, even though the record was clear that Plaintiff had been a 'star' employee before Lendh became his supervisor."  Scanlon Br. at 5.  Scanlon also contends that his earlier "star" performance demonstrates that "the terms and conditions of the Short Term Objectives program ... were not reasonable and were not achievable."  *Id*. at 6.

4

Opinions from the Third Circuit regarding the relevance of prior strong performance have not been entirely consistent.  For example, in *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir. 1995), the Third Circuit observed that although the plaintiff "had some problems in a few aspects of the job, ... he performed well in the one area deemed by [Defendant] to merit a performance bonus," which "raises genuine issues about the credence of [Defendant's] performance-based explanation."  On the other hand, the Third Circuit recently held that "[t]he attempt to use past positive performance reviews to show that more recent criticism was pretextual fails as a matter of law."  *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 474 (3d Cir. 2005) (*citing Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992)).

What is at issue in this case is whether Honeywell management, and particularly William Lendh, retaliated against Scanlon due to his July 12, 2001 call to the Ethics Hotline.  Lendh was hired by Honeywell as of February 2001.  Defendant's Stmt. of Facts at ¶ 4.  Guy Grumbles, Lendh's immediate supervisor, became Sales Director in late 2000.  Scanlon dep. at 55-56. There is no evidence that Lendh or Grumbles were involved in Scanlon's favorable performance reviews and awards; the record clearly reflects that Scanlon's favorable performance reviews and awards were received under other managers.  *See* Scanlon dep. at 55.  Under these circumstances the Court finds and rules that evidence of Scanlon's favorable performance reviews and/or awards, which were received under different managers before the time period at issue in this case, are not relevant to whether Scanlon was subjected to unlawful retaliation.  Moreover, even if evidence of Scanlon's job performance in 2000 and earlier were relevant, the Court finds and rules that the probative value of such evidence would be substantially outweighed by considerations of undue delay.  Therefore, Scanlon will be prohibited from introducing evidence of his favorable performance reviews and awards for his pre-2001 performance under managers other than Lendh and Grumbles.

D.    Evidence regarding Scanlon's profit margin numbers

Honeywell contends that evidence of Scanlon's profit margins is irrelevant to whether he was subjected to retaliation, and therefore inadmissible.  Honeywell Br. at 5.  As explained by

5

Honeywell, "[i]n the eyes of Plaintiff's management, his projected bookings were far too low, so the fact that the few projects he did sell may have produced adequate profit margins was beside the point." *Id.*  In opposition, Scanlon argues that a salesperson's profit margin was actually used by Lendh in the assessment of sales representatives, that despite the fact that his profit margin was the highest of anyone supervised by Lendh, he was the only one who was terminated, and that Lendh's failure to consider his profit margin indicates that Lendh failed to follow company policy, which in turn may demonstrate that Lendh's reasons for placing Scanlon on a Short Term Objectives Plan and terminating his employment are unworthy of belief.  Scanlon Br. at 9-10.

Although evidence of Scanlon's profit margins does not appear to have overwhelming probative value, based on Scanlon's arguments the Court is unable to find that such evidence is irrelevant.  The Court finds and rules that Scanlon may introduce evidence of his profit margins while managed by Lendh, and may introduce evidence that Lendh did, did not, or should have considered Scanlon's profit margins while making employment decisions.  Scanlon may not, however, introduce evidence of his profit margins prior to 2001, *i.e.*, when he was managed by someone other than Lendh.  The Court has already found that Scanlon may not introduce evidence of his favorable performance reviews and awards for his pre-2001 performance under managers other than William Lendh and Guy Grumbles.  Evidence of Scanlon's profit margins prior to Lendh's management is likewise temporally remote from the employment decisions at issue and will be excluded due to the lack of relevance.

E.    Scanlon's testimony about his beliefs regarding the intent of Honeywell management

Honeywell contends that Scanlon should not be permitted to testify as to his belief that Lendh wanted him "out of" Honeywell, and that Lendh was trying to terminate him.  Honeywell Br. at 6.  Honeywell correctly points out that Scanlon "must prove his case with facts - not mere beliefs, speculation, and conclusory assertions about what his managers intended or were motivated by." *Id.*  The Court finds and rules that Scanlon may not offer any opinion he may have regarding the intent of Lendh or any other member of Honeywell management.

Scanlon does, however, assert that he will show that Lendh was trying to terminate him "by showing Defendant's usual policy and practice for dealing with employees with performance problems, by showing that his being placed on an unreasonable and unachievable Short Term Objectives program was not in keeping with Defendant's policy and practice, and that during Lendh's supervision of him, Lendh was dead set on terminating him."  Scanlon Br. at 10-11. Scanlon is free to do so, provided that he attempts to prove such an intent *with facts*.

Conclusion

For the reasons stated above, defendant Honeywell, Inc.'s Motion in Limine will be granted in part and denied in part.  An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KEVIN M. SCANLON,                            )
                                             )
                        Plaintiff,           )
            v.                               )
                                             )     2:03cv869
HONEYWELL, INC.,                             )
                                             )
                        Defendant.           )

## ORDER OF COURT

AND NOW, this 18th day of October, 2005, in accordance with the foregoing Memorandum Opinion it is hereby **ORDERED, ADJUDGED and DECREED** that Defendant's Motion in Limine (*Document No. 37*) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1.  Plaintiff may introduce evidence that West Virginia was removed from his sales territory, and evidence of increases in his sales quotas during his supervision by William Lendh ("Lendh"). Scanlon may also introduce evidence of the downgrading of his performance appraisal;

2.  Plaintiff may not introduce evidence of his conversations with co-workers regarding Lendh's "Irish-Catholic" comments;

3.  Plaintiff may not introduce evidence of his favorable performance reviews and awards for his pre-2001 performance under managers other than Lendh and Guy Grumbles;

4.  Plaintiff may introduce evidence of his profit margins while managed by Lendh, and may introduce evidence that Lendh did, did not, or should have considered Plaintiff's profit margins when making allegedly retaliatory employment decisions. However, Plaintiff may not introduce evidence of his profit margins prior to 2001, *i.e.*, when he was managed by someone other than Lendh; and

5.  Plaintiff may not offer any opinion he may have regarding the intent of Lendh or any other member of Honeywell management.


BY THE COURT:


s/ Terrence F. McVerry
United States District Court Judge

cc:   James H. Logan, Esquire
      Email: loganloganemp@yahoo.com

      Timothy P. O'Brien, Esquire
      Email: tpob@icubed.com

      Carole S. Katz, Esquire
      Email: ckatz@morganlewis.com